O’Neall J.
The questions arising out of multifarious grounds for a new trial, will be discussed and decided, in that order and arrangement which may be most convenient.
1st. The first is, had the defendant the right to strike out the general issue plea, on filing liis plea of justification ? The defendant it appears did not move for leave to file his plea of justification until the case had been called for trial: he was not then entitled to his motion, and it was so ruled by the presiding Judge ; but the plaintiff consented that the justification might be filed, provided the general issue was suffered to remain ; the defendant acquiesced in this arrangement. Under these circumstances he could not be lowedto strike out the general issue plea, and however inconsistent the two pleas were, yet the defendant had been permitted by special favor to justify, upon the condition that he should be subject to the vantages of having both pleas upon the record ,* he could not after consenting to the condition, and taking the benefit which he desired under it, be allowed ÍQ get rid OI it.
2nd. Had the defendant the right to the reply in evidence and argument? The rule very clearly - — -— -- — ——— -- *252 that the party who is plaintiff in the issue made by the record, is entitled to the reply. “ vVhere there are several issues, some of which are to be proved by the plaintiff and others by the defendant, the plaintiff is begin and give evidence of those which are to be proved by him; the defendant is nest to offer evidence 1 7 . , . , , ,. to establish the issues on his part, and at'the same time the proofs of the plaintiff; then the plaintiff is entitled to adduce testimony for disproving or answering the affirmative evidence of the defendant; afterwards the defendant’s counsel has the right to a reply, limited to the evidence adduced in answer to his affirmative, and finally the plaintiff’s counsel lias the right to a general reply, upon the whole case.” 1 Saund, on plead, and Ev. 603. The evidence was heard as appears on referring to the judge’s notes, m contor-mity to this rule. The right to reply in the argument, depends upon the question who is entitled to the genc-raj reply in evidence. In the case under consideration, there were made up by the record two issues, the general issue, and the issue on the plea of justification : in the first, the plaintiff in the action was the actor, and in the °tber, the defendant. However inconsistent the issue denying the publication, and the justification admitting tlie publication but justifying it as may be, yet by the consent of both parties in this case, both issues were made up. The general issue a plea in justification, may it seems, under some circumstances be allowed to stand together on the record, and to have an important hearing on the case, 2 Saund. on Plead. and Ev. 387. The consent of the defendant to this inconsistent state of the pleading, deprive him of all right of objection to it; and hence ins rights must be judged or, in precisely the orgame v/av as jf the pleading had been consistent and i i re£u*ar* The defendant’s right to the general reply m evidence, and the reply in argument, depended on the question, whether lie had by his pleading, made himself ofplabitiff in all the issues before the Court ? The general issue plea, deprived him of this benefit and ad *253 vantage, and the order pursued on the trial, in hearing the evidence, and in the argument of the case, was Correct.
thí°state,liwheñ witnesses’are to for the parties to rfthem to tiS duty ít thenisi t° keep them if a witness wards be present minat!on,le °th¡ him^haii"noth? either ’ party fírnTsh Ítewttnoasreíhe ílf sibiuty of ¿cep-CMrt,ea”d°fonef should"be'Cpresent during the oouia not ined.
The credit a witness may be atroof edthat by Had0saidm“thát 0inonsSOhe ,S
a witness máy proof
3d. The third, sixth and seventh grounds [that, Court refused to receive evidence that the plaint.ffs lived unhappily together, and that the husband ped his-wile,] may be considered together, as presenting a question as to the admissibility of evidence of the same character, arid only differing in the particular incidents proposed to be proved. The general rule is, that “such evidence alone ought to be admitted, as relates to the questions in issue and supports the aver-ments in the pleadings,” 2 Saund. on Plead, and Ev. 601. The pleadings in this case make but two issues, the publication, and the truth of the words. The subject matter of the suit however, is an injury done to the character of the plaintiff Mrs.' —= . To estimate its extent correctly, the law permits evidence of a general bad character, or such facts and circumstances, as would amount to a reasonable cause of suspicion that the plaintiff was guilty of the offence imputed to her, to be given in evidence in mitigation of damages. It is not pretended that the facts, that the plaintiff-whipped his wife, or that they lived unhappily together, have any direct relevancy to the issues made. Indeed such a proposition would be too absurd, to be made seriously. It is however supposed, that they ought to go in mitigation of damages. But to be admissible in that point of view, they ought to have some relevancy to the injury complained of. But they have none. The act' of the legislature, makes words imputing to a female, a want of chastity, actionable in themselves. The loss of character, in words of this kind, as well as in those imputing a crime, is in legal intendment, the injury for which the party demands redress. It may be, (if the allegation be true) that her husband may have whipped her, or that they lived unhappily together, from some other cause than her want of virtue. She may be perfectly chaste, and yeta termagant, or she may have the misfortune to have one of those sour, cross-grained. *254 ill-uatured husbands, whom it is impossible to piease, and whose unruly passions it isas impracticable to go-vera, as for man to control the hurricane or tornado. From such proof any inference might be wide of the truth ; and character is not to be destroyed by a rash presumption. It is however a sufficient answer to the grounds of appeal in this respect, to say that the evidence offered, does not relate to either of the issues, and is not calculated to shew a bad character, or to create a suspicion that the plaintiff was guilty of that, which was imputed to her. If such testimony could have had any effect, it ought to have aggravated, instead of diminishing the damages. For surely the plaintiff was doubly an object of commiseration, and doubly entitled to the protection of the jury, if she was whipped by her husband, and slandered by his brother, and the cruelty of the former, caused by the slander of .the latter, as is too probably the case, if there is any truth in the allegation in this respect, which it is to be hoped there is not.
4th. Where witnesses are ordered to withdraw from the Court room, for the purpose of being separately examined, it is usual and proper, as was done in this case, to furnish a list of the witnesses so as to enable the sheriff to see that they withdraw. But the parties may, if they choose, decline making out lists, and by doing so, they would be under the obligation of keeping their respective witnesses out of Court. It is the object of this practice, to prevent the witnesses from hearing each other’s examination, by enabling the officer of the Court in the instance where a list is furnished, to keep the witnesses from listening to the examination; and in the other, to give the party against whom a witness is offered to be sworn, the right to object this examination if he has been present during the examination of the other witnesses. But there is no necessity to put down the names of witnesses who are not in attendance ; when they do attend, the party intending to swear them, must either put their names on the list, or see that they do not come into Court, before they are *255 walled to testify. The defendants counsel complains, that he was surprised by witnesses being called, whose names were not on the list furnished; this may be true in one sense of the word, for it is often a surprise to find a fact proved which we did not expect, but there cannot be any thing like a legal surprise in the case. The defendant had no right to know the names of the plaintiff’s witnesses except to compel them to withdraw from the Court room. If this was done without a list, he might have been just as much surprised by seeing a witness put on the stand, whom he did not know was in attendance on the Court. But there is no pretence that the party was by any means cut off" from giving any testimony, which he could have done if he had been furnished with a complete list.
The witnesses sworn by the plaintiff the subject of complaint in this ground, were not in attendance when the list was made out, and there is no pretence that they were in Court until called to testify. It appears that additions were made to the list; and I presume as the witnesses attended Court, their names were put down. Such as were not in attendance, could not have been embraced by the order that the witnesses should withdraw; nor can it be supposed that the plaintiffs’ counsel, from the terms made use of in requiring all to withdraw, meant those who were then absent from Court.
5th. The rule is stated in 2 Saund. on Plead, and Ev. 569, to be, that “where it is desirable that the witnesses should be examined separately out of the hearing of each other, to prevent them from hearing the testimony of each other, the Court will order the witnesses to withdraw, and if any witness, after the order remain in Court, he cannot be examined.” This writer refers to an authority which I have not been able to find. The rule is, I presume, correctly stated as a rule of practice of the Court of Exchequer, and possibly, of the Court of King’s Bench and Common Pleas. But I apprehend it applies only to a case where the witnesses are ordered to withdraw, and the parties are made responsible for its execution- In *256 State, the practice is, for the parties to furnish the names of their witnesses in attendance, who are called into Court, and placed in the care of the sheriff whose duty it then is to keep them out of the hearing of the witnesses under examination. This practice seems to have been complied with, in this case, and the plaintiffs cannot be deprived of the benefit of the testimony of their witnesses, by the fact that without any fault of theirs, they have violated the order of the Court. They are, for the purposes of this order, in the care of the officer of the Court, and it is the business of each party to see, that the officer does his duty, in keeping the witnesses of his adversary out of Court. If the party chooses not to furnish a list, and thus, to place his witnesses in the control of the Court, he is responsible that they shall obey the order to withdraw, and if notwithstanding it, they are within hearing of the examination he could not be permitted to examine them.. The violations of the order complained of in this case, appear to have beén accidental and unintentional; and ought not, in the exercise of a sound discretion, which the Court has the right to exercise in applying a rule of practice, to deprive the party of the testimony of the witnesses. The object of separating witnesses is, to afford means of discovering discrepancies in the different accounts, which (if not - true) the witnesses will give, of the same transaction. Where witnesses are called to speak as to character, there can be no difference in facts, for of facts the witness here does not pretendió speak; he merely answers as to general reputation, and upon that gives his own opinion. To such testimony, the reason of the rule requiring the witnesses to be separated, it appears to me, does not apply.
8th and 7th. [The remarks of his Honor on these points going only to shew, that the grounds of appeal here commented on, are not sustained by the facts of the case or the report of the presiding Judge, are therefore omitted.]
8th. The twelth ground alledges, that the Court permitted the plaintiff to go into evidence of particular *257 facts to impeach the character of Nimrod Mitchell, viz : as to what he said at church about swearing to a lie on some points. ■ The credit of a witness may be assailed by shewing him to be unworthy of credit in a Court of justice ; this is generally done by proof of bad character. And in proof of this kind, the party assailing the witness, cannot go into evidence of particular crimes, committed by the witness, (unless a conviction of a felony for the crimen falsi, can be produced,) and this is what is meant by not being allowed to go into particular facts to shew a want of character. For the witness is not supposed to come prepared to answer for every particular act of his life, but to shew on the whole that he has supported such a character as entitles him to credit. But a general bad character is not the only mode of discrediting a witness. His examination in Court, or contradictory accounts of the same transaction, may authorize a jury to disbelieve him. So too the belief of a witness, that he was not bound on oath to tell the truth, would if coming from his own lips render him incompetent to be sworn, or if after he was sworn, and had testified, it was proved by another witness, it would constitute a most satisfactory reason why the jury should disbelieve him. The testimony allowed for the purpose of impeaching the credit of Nimrod Mitchell, was of this character. It was proved that he had said “that if he heard any man say, he would not swear a lie, he would ■not believe him., for on some particular occasions he would, for he thought any man would.” The substance of this declaration was, that he' would not on some occasions feel himself bound to declare the truth on oath. This was resolving the obligation of an oath, and the commission of perjury, into a matter of convenience, to be judged of by the witness. Was such a witness entitled to credit l The good sense of every one will negative the question. Is not such testimony • better evidence to discredit the witness than even a want of character ? It is clear that it is. For even the condemned felon may .hesitate in sv/earing falsely. But the man who believes he is under no le- *258 01‘ moral obligation, at all times and under all eir-cumstances, to tell the truth under the sanction of an oath, has destroyed the only test by which he can claim credit at the hands of men. Such evidence is not establishing bad character from particular facts. It is shewing, that the witness holds such opinions of the obligation of an oath, as to render him unworthy of belief, when he has called God to witness the truth of what he asserts.
8th. The thirteenth ground alledges,that the presiding Judge erred in ruling that the plaintiff might shew that the defendant’s witnesses were of general bad moral character, when it should have been confined to their general character for truth only. The true mode of assailing a witness’ credit for want of character, is by asking first the question, “what is the witness’ general character ?” If this is answered that it is bad, then it is followed by the question, “from his general character, would you believe him on his oath in a Court of justice ?” If the witness assailed, is of general bad moral character, his general character in legal contemplation is a bad one in all respects. For a general bad moral character, can only exist where a man’s vices so far prepondei-ate over his virtues, as to force the conclusion in the mind of a majority of his acquaintances, that he is a bad man. The ground seems to suppose that there is a difference between a legal bad character, and a moral bad character. But on turning to 1 Saund. on Plead, and Ev. 436 — 7—8, it will be seen, that good or bad moral character, is the only inquiry in a Court of justice; and I should deeply regret it, were it otherwise. For, to say that a man, destitute of moral character, should be legally regarded as of good character, until he had committed some crime, for which, on conviction he would be liable to be punished by infamous corporal punishment, would be destroying all distinction between virtue and vice, and would be placing a man reeking with vice and moral infamy, along side of, and o.n an equality with another adorned with every virtue. After a witness has been proved to be of general bad character, the *259 party in whose favor he has testified,' may inquire whether notwithstanding his bad character in other respects, he has not preserved his character for truth; and if this inquiry is answered affirmatively, the jury may seize upon it, as the floating plank in his general wreck, and believe him. ' But this credit should be yielded cautiously, and after a thorough conviction that the sense of truth has maintained its empire against all the encroachments of vice.
A. W. Thompson & Clarke, for the motion.
Woods & Gregg, contra.
10th. The ninth and eleventh grounds depend upon the evidence, and of that, the jury were competent judges. But it is due to the case that I should say, that after reading over the testimony, I fully concur with the jury, in their conclusion, that the charge made against the plaintiff Mrs-was untrue ; and that the slander was so aggravated by the relation existing between the parties, the defence made on the record, and in the proof, that no damages which could have been found, ought to have been regarded as excessive.

Motion dismissed.

Johnson J. concurred.
Harper J. absent.